UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **USI INSURANCE SERVICES LLC,**<br>Plaintiff,<br>v.<br>**KENNETH DIXON WRIGHT, ET AL.,**<br>Defendant. | Case No. 4:23-cv-01070-YGR<br><br>**ORDER DENYING PLAINTIFF'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER**<br>Re: Dkt. No. 8 |

Plaintiff USI Insurance Services LLC ("USI") has filed an *ex parte* motion seeking a temporary restraining order and order to show cause why a preliminary injunction should not be issued. In short, USI seeks an order restraining defendant Kenneth Dixon Wright from soliciting or initiating contact with USI's clients, competing with USI, and soliciting USI's employees in violation of covenants and restrictions contained in a purchase agreement from April 2009. Plaintiff's counsel's declaration indicates that he has given notice of the pending motion to Wright by e-mail at an e-mail address previously used for correspondence.

Having considered the complaint, USI's motion, the memorandum in support, the declarations of Baldwin Lee, Duke Tomei, and Tim Prichard, and all supporting exhibits, this Court **DENIES** the application on the grounds that plaintiff has failed to establish a likelihood of success on the evidentiary record submitted.

Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977); *Stuhlbarg lnt'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). Preliminary injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction, is an "extraordinary and drastic remedy," that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008) (internal

1    citations omitted).  In order to obtain such relief, a plaintiff must establish four factors: (1) it is
2    likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of
3    preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public
4    interest.  *Winter v. Natural Resources Defense Council. Inc*., 555 U.S. 7, 20 (2008).  The plaintiff
5    must make a threshold showing of likelihood of success on the merits and irreparable harm, but a
6    stronger showing on one element may offset a weaker showing on another.  *Alliance for the Wild*
7    *Rockies v. Cottrell*, 632 F.3d 1127, 1131–33 (9th Cir. 2011).  In that regard, courts employ a
8    sliding scale: "serious questions going to the merits and a balance of hardships that tips sharply
9    toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also
10   shows that there is a likelihood of irreparable injury and that the injunction is in the public
11   interest."  *Id*. at 1135 (internal quotations omitted).

12   Here, plaintiff argues that Wright has breached and is continuing to breach a purchase
13   agreement that included non-solicit and non-compete covenants to which Wright agreed in
14   connection with the sale of Cailindsey Partnership in April 2009.  The applicable restrictions,
15   which would apply for two years after Wright's termination at USI, provide that Wright is
16   prohibited from:

> attempt[ing] to divert any of the business of the Seller or Purchaser by soliciting or initiating contact with: (1) clients, prospective clients, or referral sources of the Seller, its Partners or any surety related businesses of Wells Fargo and affiliates; or (2) clients, prospective clients, or referral sources of Wells Fargo and affiliates who become known to Partner K. Dixon Wright during his employment with the Purchaser, any successor or Wells Fargo and affiliates as employers for the purpose of diverting their business away from the Purchaser or Wells Fargo and affiliates.
>
> [or]
>
> solicit[ing] the following in an attempt to encourage them to sever their employment relationship with the Purchaser, any successor thereto or Wells Fargo and affiliates: (1) employees who are working or have worked for the Seller or in any surety related businesses of Wells Fargo and affiliates; or (2) employees of Wells Fargo and affiliates whose identity or other Trade Secret Information becomes known to Partner K. Dixon Wright during his employment with Purchaser, any successor or Wells Fargo and affiliates.
>
> [and]

>engag[ing] in competition with Purchaser or Wells Fargo and affiliates in the business of offering (1) surety bonds; or (2) risk management services; or (3) other products, services or activities conducted by the Seller at any time within the twelve (12) months prior to the Closing Date, or the Purchaser during the Restricted Period (hereinafter the "Restricted Business") within all counties located in the State of California ("Restricted Area'');
>
>[or]
>
>aid[ing] or assist[ing] any person or company engaging in, developing, or entering into the Restricted Business within the Restricted Area;
>
>[or]
>
>. . . becom[ing], act[ing] or serv[ing] as an employee, consultant, contractor, director, officer, or advisor, to any person or company engaging in the Restricted Business within the Restricted Area

(Dkt. No. 8-2, Purchase Agreement ¶¶ 2.2.2;  2.2.3;  2.3.1;  2.3.2;  2.3.4.)

While the motion goes to great lengths to support the enforceability and validity of the restrictions, it fails to proffer sufficient evidence that Wright has violated them.  In a bald fashion, the motion asserts that Wright "solicited" a "longtime USI client JA Solar" to Wright's company SRC, which he purportedly controls.  (Dkt. No. 8-4, Declaration of Duke Tomei ["Tomei Decl."] ¶¶ 11-13.)  What Wright actually did to solicit JA Solar is absent from the record and USI's presentation does nothing to rule out that JA Solar made the move to SRC voluntarily.  Nor does USI provide any foundation for Wright's "control" over SRC.

The record is equally as deficient as to USI's suggestion that Wright solicited Arntz Builders, Inc. as a client to SRC.  (Tomei Decl. ¶ 19.)  The only evidence proffered is a letter from Great American Insurance Company noting that Arntz Builders changed brokers.  (Dkt. No. 8-6.) There is no plain nexus to Wright shown and, once again, the motion fails to persuade that the transfer was not made by Arntz Builders voluntarily.[1]

---

[1] Nor has any foundation been proffered to demonstrate how the letter shows the transfer was made to SRC where the document refers to Great American Insurance Company.

1  Furthermore, USI asserts that "Wright sent me an e-mail stating that he would be soliciting
2  all of the USI clients that it had entrusted to him to service . . . and that he was working to move
3  USI subordinate Stacy Clinton to SRC." However, the correspondence has not been provided.
4  (Tomei Decl. ¶ 16.) Remarkably, USI did provide other correspondence and strategically omits
5  the correspondence that would corroborate and give weight to its central assertions. (*See, e.g.*,
6  Dkt. No. 8-5.) At this juncture, there is also no indication that Stacy Clinton did not resign and
7  join SRC on her own.
8  In light of the foregoing, the showing of likelihood of success is deficient as an evidentiary
9  matter and the motion is denied.
10  This Order terminates Docket Number 8.
11  **IT IS SO ORDERED.**
12  Dated: March 17, 2023

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**