UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **USI INSURANCE SERVICES, LLC**, <br><br> Plaintiff, <br><br> vs. <br><br> **KENNETH DIXON WRIGHT AND SURETY RESOURCE CONNECTION, INC. DBA SRC DIGITAL INSURANCE SERVICES**, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIM | Case No.: 4:23-CV-01070-YGR <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;** <br><br> **DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 60 & 61 |

Pending before the Court are parties' cross-motions for summary judgment relative to defendant and counterplaintiff Kenneth Dixon Wright's amended counterclaim against plaintiff and counterdefendant USI Insurance Services LLC. In short, the parties dispute whether a 2017 employment agreement to which Wright is a party supersedes an earlier-executed purchase agreement which contains certain employment-related terms, but was executed in conjunction with a separate employment agreement. Having carefully considered parties' briefs and argument at the March 15, 2024 hearing, and for the reasons below, the Court determines that it does.

Accordingly, USI's motion for summary judgment is **GRANTED IN PART** insofar as Wright seeks declaratory relief related to the earlier-executed purchase agreement and **DENIED IN PART** insofar as he seeks declaratory relief related to the 2017 agreement.[1] Wright's motion for summary judgment is **DENIED**.

---

[1] Wright seeks declaratory relief in the form of court order declaring that his conduct with respect to his company Surety Resource Connection, Inc. ("SRC") "is fully permitted *under the parties' agreements* and as a matter of law." *See* Dkt. No. 40, Wright's First Amended Counterclaim for Declaratory Judgment ("FACC") at 7:5–11 (emphasis supplied). The Court determines the phrase "under the parties' agreements" is ambiguous. It is unclear whether the FACC seeks declaratory relief

## I. BACKGROUND

Parties do not, at this stage, genuinely dispute the underlying facts.[2] Instead, their disagreement concerns a purely legal question: which agreement controls? Thus, the Court identifies and summarizes the three agreements relevant to the proceeding analysis. They are labeled: (i) Purchase Agreement;[3] (ii) Employment, Trade Secrets, and Non-Solicitation Agreement;[4] and (iii) Employment Agreement.[5]

### A. 2009 Purchase & Employment Agreements[6]

In 2009, Wright sold his insurance brokerage, Cailindsey Partnership, to Wells Fargo Insurance Services of California, Inc. ("WF") and memorialized the sale in a written purchase agreement. Notably, the 2009 Purchase Agreement provides for Wright's employment by WF after the sale of his brokerage as well as certain terms of that employment. (*See, e.g.*, *id.* § 5.5.1.) For instance, the agreement imposes non-compete and non-solicitation terms on Wright. (*See generally id.* §§ 2.1–2.3.) It also addresses, among other employment-related matters: (i) the eligibility of Cailindsey employees, such as Wright, for WF "employee welfare and retirement plans" (*id.* § 5.5.2); and (ii) the computation of additional payments to Wright based on his commissions and fees. (*Id.* § 3.1.)

---

relative to: (i) the 2017 Agreement and the 2009 Agreements collectively; or (ii) only as to the 2009 Agreements. This Order anticipates and addresses both potential approaches.

[2] To the extent parties make substantive arguments about whether Wright violated the terms of the any of the above-referenced agreements, the Court disregards such arguments as irrelevant to the pending motions, which address the narrow issue of whether the 2017 Employment Agreement supersedes other, earlier-executed agreements.

[3] *See* Dkt. No. 60-1, USI's Motion for Summary Judgment ("USI Mot."), Parties' Appendix of Joint Exhibits, Ex. A ("2009 Purchase Agreement").

[4] *See* Dkt. No. 60-1, USI Mot., Parties' Appendix of Joint Exhibits, Ex. B ("2009 Employment Agreement").

[5] *See* Dkt. No. 60-1, USI Mot., Parties' Appendix of Joint Exhibits, Ex. C ("2017 Employment Agreement").

[6] The Court refers herein to the 2009 Purchase Agreement and 2009 Employment Agreement collectively as the "2009 Agreements."

The 2009 Purchase Agreement cross-references the separate 2009 Employment Agreement which the parties executed contemporaneously. This agreement addresses, among others, Wright's term of employment by WF (*id.* § 1); compensation (*id.* § 3); and his obligations to safeguard WF trade secret, confidential, and proprietary information. (*Id.* § 4.)

### B.   2017 Employment Agreement

USI purchased WF in 2017. As part of the acquisition, USI entered into an employment agreement with Wright. This agreement sets forth the terms of Wright's employment by USI, including, among others: (i) his compensation and benefits (*id.* § 3); (ii) the term of his employment (2017 Employment Agreement §§ 2.5; 8); as well as (iii) his obligations to avoid conflicts of interest (*id.* § 2.3), maintain the confidentiality of USI confidential and trade secret information (*id.* §§ 7.1–7.3), and refrain from soliciting "[USI's] Active Prospective Clients or Client Accounts." (*Id.* § 7.5.)

Relevant here, the 2017 Employment Agreement contains an integration clause which reads:

> **ENTIRE AGREEMENT.** No agreements or representations, oral or otherwise, express or implied, have been made with respect to [Wright]'s employment hereunder except as set forth in this Agreement. ***This Agreement supersedes and preempts any prior oral or written understandings, agreements or representations by or between [Wright] and [USI] or any Predecessor***, including without limitation, any previous employment or other similar agreement between [Wright] and [USI] or any Predecessor, ***which may have related to the subject matter hereof in any way.***

(*Id.* at § 11 (emphasis supplied).)

### C.   Pending Cross-Motions for Summary Judgment

The parties seek summary judgment regarding the above-referenced agreements. USI's motion argues that: (i) the declaratory relief sought therein pertains to the 2009 Agreements; (ii) such agreements were superseded by the 2017 Employment Agreement; and (iii) thus, there is no justiciable controversy for the Court to adjudicate. (*See generally* USI Mot.) Wright argues the contrary, namely "that the 2009 Purchase Agreement was not superseded by the 2017 Employment Agreement and that it is currently in force and effect." (*See generally* Dkt. No. 61, Wright's Motion for Summary Judgment ("Wright Mot.") at 2:2–4.)

## II.   LEGAL FRAMEWORK

The standard for cross-motions for summary judgment is well-known and not in dispute.

## III. ANALYSIS

The parties agreed on the record at the March 15, 2024 hearing that the 2017 Employment Agreement superseded the 2009 Employment Agreement. Thus, resolution of the pending motions hinges on whether the 2017 Employment Agreement also supersedes the 2009 Purchase Agreement. In relevant part, 2017 Employment Agreement's integration clause states that it supersedes "any prior oral or written" agreement between Wright and USI (including USI's predecessor-in-interest WF) so long as such prior agreements "relate[] to the subject matter" of the agreement "in any way." (*See* 2017 Agreement § 11.)

The Court interprets the above-referenced language to express the shared understanding of USI and Wright that the 2017 Employment Agreement supersedes the 2009 Purchase Agreement.[7] Two reasons drive the analysis. First, the 2009 Purchase Agreement is a "prior oral or written" agreement between Wright and USI's predecessor-in-interest WF. Second, the subject matter of the 2017 Employment Agreement relates to the subject matter of the 2009 Purchase Agreement as both agreements pertain, at least in part, to the terms of Wright's employment in the insurance business.

Thus, the Court finds that the 2017 Employment Agreement supersedes the 2009 Purchase Agreement per the plain text of the 2017 Agreement's integration clause. Wright's FACC therefore states no justiciable claim relative to the 2009 Purchase Agreement as that agreement does not control. *See* 28 U.S.C. § 2201(a) (permitting courts to enter declaratory judgment only where, among other prerequisites, an "actual controversy" exists); *see also S. California Painters & Allied Trades, Dist. Council No. 36 v. Rodin & Co.*, 558 F.3d 1028, 1035 (9th Cir. 2009) (holding that, where an agreement is no longer in force, a request for declaratory judgment requiring the court to parse such agreement does not constitute a "substantial controversy" and the matter is moot); *see also id.* ("There is no basis for awarding declaratory relief on an expired agreement.").

Wright's two main counterarguments fail to compel a different result. *First*, Wright contends that the 2017 Employment Agreement does not supersede the 2009 Purchase Agreement because the 2017 Employment Agreement was executed by different parties, relied on different consideration, and the

---

[7] Because the Court determines the 2017 Employment Agreement supersedes the 2009 Purchase Agreement in full, it does not consider parties' arguments regarding whether the "code exception" in the 2009 Purchase Agreement was superseded by the 2017 Employment Agreement.

language regarding Wright's work with SRC differs. (*See generally* Dkt. No. 62, Wright's Opposition to USI's Mot. ("Wright Opp'n") at 3–5.) The Court finds this argument only partially persuasive. While the 2009 Purchase Agreement differs in some respects from the 2017 Employment Agreement (chief among them, providing for the sale of Wright's brokerage), it simply cannot be said that the 2009 Purchase Agreement does not "relate[] to the subject matter" of the 2017 Employment Agreement "in any way." (*See* 2017 Agreement § 11.) As set forth at length above, the 2009 Purchase Agreement contains numerous terms purporting to govern Wright's employment. (*See* 2009 Purchase Agreement §§ 2.1–2.3; 3.1; 5.5.2 (described *supra*).) This is enough to render the 2009 Purchase Agreement, at the very least, minimally related to the 2017 Employment Agreement. That is sufficient, under the integration clause, for it to be superseded.

*Second,* Wright argues that USI should be judicially estopped from asserting the 2009 Purchase Agreement is superseded by the 2017 Employment Agreement because it previously brought a breach of contract claim against Wright under the 2009 Purchase Agreement. Wright relies on the U.S. Supreme Court case *New Hampshire v. Maine*, 532 U.S. 742 (2001) for support of this theory. (*See* Wright Opp'n at 6:19–23 (quoting *New Hampshire*, 532 U.S. at 743).) However, Wright's citation is suspect. He appears to quote from the syllabus, which is not part of the Supreme Court's opinion, thereby ***misquoting and misrepresenting*** the case. He omits, for instance, a critical sentence from the actual opinion which states that the doctrine of judicial estoppel is typically not applied where a Court has not previously ruled in favor of the contrary position alleged to have been taken.[8] *See New Hampshire*, 532 U.S. at 750–51("Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity.") (cleaned up). As USI correctly notes in their reply, this Court denied the motion in which USI previously argued that Wright should be held liable under the 2009 Purchase Agreement.  In fact, the Court has never ruled in USI's favor on the merits of the breach of

---

[8] The Court admonishes counsel for Wright to review their Rule 11 obligations of candor to the Court. Such obligations are particularly salient where, as here, counsel purport to invoke controlling authority in the form of a U.S. Supreme Court case.

contract claim they previously pursued relative to the 2009 Purchase Agreement.[9] Wright knows this.[10] As such, the *New Hampshire* standard has not been satisfied, and application of the judicial estoppel doctrine here would be inappropriate.

IV. **CONCLUSION**

For the foregoing reasons, the Court determines the 2017 Employment Agreement supersedes the 2009 Purchase Agreement. The Court therefore **GRANTS IN PART** USI's motion for summary judgment insofar as the FACC seeks declaratory relief related to the 2009 Purchase Agreement, and **DENIES IN PART** the motion insofar as the FACC seeks declaratory relief related to the 2017 Employment Agreement.[11] Wright's motion is **DENIED**.

The Court sets a case management conference for **April 29, 2024 at 2:00 p.m**. The parties shall meet and confer and provide a joint statement concerning the efficient resolution of this action given this Order.

This terminates Dkt. Nos. 60 & 61.

**IT IS SO ORDERED**.

Dated: April 1, 2024

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[9] *See* Dkt. Nos. 12 (order denying request for temporary restraining order on such grounds); 24 (order denying request for preliminary injunction on such grounds); *see also* Dkt. Nos. 51 & 52 (in which USI voluntarily dismissed their breach of contract claim against Wright for violating the 2009 Purchase Agreement, and the Court approved the dismissal).

[10] For example, he begins one of his briefs with the following: "When Plaintiff USI filed its complaint nearly a year ago and pressed the court for a TRO and preliminary injunction, *both of which were denied*, it had asserted in its first cause of action a claim for breach of the 2009 Purchase Agreement, seeking to enforce its covenant not to compete." Wright Opp'n at 1:2–4 (emphasis supplied).

[11] Given this, the Court does not reach USI's alternative request that the Court exercise its discretion to dismiss the FACC as a redundant "mirror image" of the complaint.